

FILED
JAMES BONINI
CLERK

04 JUN 24 AM 9:24

FILED
JUN 2 2 2004
LEONARD GREEN, Clerk

00-986

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 02-4152; 02-4225

McWANE, INC.,
    Plaintiff - Appellant/Cross-Appellee,

v.

FIDELITY & DEPOSIT COMPANY OF MARYLAND,
    Defendant - Appellee/Cross-Appellant,

GROOMS CONSTRUCTION COMPANY, INC.;
HIGHLAND COUNTY WATER COMPANY, INC.,
    Defendants.

Before: KRUPANSKY and GILMAN, Circuit Judges; RUSSELL, District Judge.

## JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court granting summary judgment to defendant Fidelity & Deposit Co. is REVERSED, and the district court's resolution of the joint check rule and the Uniform Commercial Code is AFFIRMED. IT IS FURTHER ORDERED that the case is REMANDED for further proceedings consistent with the opinion of this court.

ENTERED BY ORDER OF THE COURT

Leonard Green, Clerk

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0191P (6th Cir.)
File Name: 04a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MCWANE, INC.,
    *Plaintiff-Appellant/*
    *Cross-Appellee,*

v.

FIDELITY & DEPOSIT
COMPANY OF MARYLAND,
    *Defendant-Appellee/*
    *Cross-Appellant,*

GROOMS CONSTRUCTION
COMPANY, INC.; HIGHLAND
COUNTY WATER COMPANY,
INC.,
    *Defendants.*

Nos. 02-4152/4225

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 00-00986—Herman J. Weber, District Judge.

Argued: March 16, 2004

Decided and Filed: June 22, 2004

1

Before: KRUPANSKY and GILMAN, Circuit Judges;
RUSSELL, District Judge.*

## COUNSEL

**ARGUED:** Daniel F. Gourash, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellant. William H. Woods, McNAMARA & McNAMARA, Columbus, Ohio, for Appellee. **ON BRIEF:** Daniel F. Gourash, David Andrew Bell, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellant. William H. Woods, Dennis D. Liston, McNAMARA & McNAMARA, Columbus, Ohio, for Appellee.

## OPINION

KRUPANSKY, Circuit Judge. This appeal involves a contract dispute between appellant/cross-appellee McWane, Inc., through its Clow Water Systems Company Division ("McWane"), and appellee/cross-appellant Fidelity & Deposit Company of Maryland ("F&D"), regarding F&D's denial of McWane's claim on a payment bond ("Bond"), issued by F&D as surety to the general contractor Grooms Construction Co., Inc. ("Grooms"), on a water-main project owned by Highland County Water Company ("Highland"). McWane operated as a material supplier on the project prior to

---

*The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

Grooms' bankruptcy.[1] McWane appeals from the district court's denial of its motion for summary judgment and the grant of summary judgment to F&D predicated on the court's conclusion that McWane impaired F&D's suretyship status when it endorsed a series of multiparty checks from the public municipality. Additionally, F&D has cross-appealed from the district court's decision that neither the joint check rule nor the Uniform Commercial Code ("UCC") were dispositive in support of F&D's argument for summary judgment. For the reasons discussed below, this court reverses the district court's grant of summary judgment to F&D while affirming the district court's conclusion that neither the joint check rule nor the UCC proved dispositive in the instant case.

In March of 2000, F&D agreed to stand surety on a payment bond for Grooms, the low bidder and general contractor on a water main project owned by Highland. McWane contracted with Grooms to supply pipe materials for the Project.[2] Prior to the start of construction, Highland

---

[1] McWane is engaged in the business of selling and supplying ductile iron water pipe and associated pipe fittings to contractors. Grooms was a general contractor engaged in the business of installing water and sewer lines but ceased doing business in January 2001. Grooms continues to be an active Ohio corporation. On April 29, 1998, Grooms entered into a credit agreement with McWane that permitted Grooms to purchase materials from McWane on an account and applied to all future sales. The agreement required payment within thirty days of the invoice date, provided for interest to accrue at the rate of 18% per annum on all past due accounts, and permitted McWane to recover all costs and expenses of collection.

[2] At the time, Grooms' financial condition was dire and F&D was unaware of the situation because it had failed to follow its standard underwriting procedures prior to underwriting the Bond. When the Payment Bond was issued by F&D through its authorized bonding agent on March 7, 2000, F&D performed no separate underwriting on the Project and the most recent information on file was Grooms' 1998 year-end financial statement which showed a strong cash position, though F&D

| 4 | *McWane, Inc. v. Fidelity & Deposit Co. of Md.* | Nos. 02-4152/4225 |

arranged with Grooms to issue joint checks during phases of the Project, with each check made payable to Grooms and its many suppliers, including McWane.[3] Highland and Grooms arrived at this arrangement without prior notice to McWane or the other suppliers.[4]

This arrangement required McWane, along with other named suppliers on the project, to endorse a joint check and return it to Grooms prior to the issuance of separate payment from the General Contractor. Highland issued a total of four joint checks between April and July of 2000, totaling approximately $1.1 million.[5] After McWane and other co-

---

also had information that Grooms was a slow-pay to its suppliers. Not until June 2000 did F&D receive Grooms' overdue 1999 year-end financial statement which indicated that the contractor had sustained $2 million in losses in 1999.

[3] Because Highland had concerns about Grooms' reputation for slow-pay to its suppliers, Highland instituted a multiple-party check payment arrangement that would include, as co-payees, Grooms and all suppliers whose invoices were submitted with a partial payment request. Neither Highland nor Grooms advised McWane which invoices were submitted with any particular partial payment request.

[4] On April 11, 2000, Grooms submitted a letter to Highland representing that Grooms had obtained agreement from its suppliers to Highland's multiple-party check payment procedure. Grooms did not contact McWane prior to that letter and Highland did not confirm McWane's acquiescence to the procedure.

[5] Highland issued the following four checks:
Multiple-party check #1 on April 19, 2000, to Grooms, McWane and Water Works as co-payees in the amount of $396,095.24.
Multiple-party check #2 on May 17, 2000 to Grooms, McWane, Water Works and another supplier, Pittsburgh Pipe, as co-payees in the amount of $471,997.23.
Multiple-party check #3 on June 21, 2000 to Grooms and McWane as co-payees in the amount of $77,111.25.
Multiple-party check #4 on July 19, 2000 to Grooms, McWane, and

payees had endorsed the checks, Grooms then issued separate checks. After the multiple parties endorsed check #2, Grooms presented a separate check to McWane for $180,912.24.[6] That check cleared and was applied to outstanding invoices. After the multiple parties endorsed check #3, Grooms presented a separate check to McWane for $78,156.73, which cleared. After Highland issued check #4 and prior to full endorsement from all co-payees, Grooms presented McWane with a separate check in the amount of $111,522.38, at the same time that McWane endorsed check #4. However, before McWane deposited check #4, Grooms stopped payment. McWane received no other money directly from Grooms, but did receive four checks directly from Highland (being previously endorsed by Grooms) totaling $29,817.63.

Once Grooms stopped payment on the check, McWane submitted a claim to F&D on the Bond for $440,208.56, the estimated amount of Grooms' arrears to McWane.[7] On September 7, 2000, F&D denied McWane's claim. In its denial letter, F&D maintained that McWane had forfeited its right to recover under the joint check rule.

On November 24, 2000, McWane filed a complaint against Highland, Grooms, and F&D. The claims against Grooms included an action on an account and breach of contract,

---

Water Works as co-payees in the amount of $172,600.76.

[6] Approximately $111,000 of check #2 represented payment for the current Project, while $69,000 was applied to invoices due on a prior separate project, per Grooms' instruction. While McWane's name appeared on check #1 for partial endorsement, as of the date of issuance of that check, McWane was owed no money from Grooms and, thus, received no proceeds from check #1.

[7] This claim was submitted on August 3, 2000. McWane subsequently reduced this amount to $427,705.69 to reflect a sales tax credit that was given to Grooms.

while the claims against F&D were for breach of payment bond and declaratory judgment. F&D and Highland also filed cross-claims. Thereafter, the parties conducted discovery, including depositions of various party representatives.

On October 31, 2001, the parties filed simultaneous motions for summary judgment. McWane filed a motion for summary judgment against F&D, Highland, and Grooms, while both F&D and Highland filed separate motions for summary judgment against McWane.

On September 13, 2002, the district court granted McWane's unopposed motion for summary judgment against Grooms in the amount of $470,214.82, plus interest. The court also granted Highland's and F&D's motions for summary judgment against McWane and denied McWane's motions for summary judgment against Highland and F&D. The court concluded that McWane was not entitled to recover against F&D because McWane had impaired F&D's suretyship status. However, the court refused to find dispositive F&D's additional claims involving the application of the joint check rule and the UCC.

On October 11, 2002, McWane made timely appeal from the district court's order denying its motion for summary judgment against F&D. McWane did not appeal the grant of Highland's motion for summary judgment, and Grooms did not appeal the uncontested grant of summary judgment in favor of McWane. On October 18, 2002, F&D timely filed its notice of cross-appeal.

This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1291. This court reviews de novo a district court's grant of summary judgment. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465 (6th Cir. 2002). A district court's interpretation of state law is also governed by the de novo standard. *Ferro v. Garrison Ind., Inc.*, 142 F.3d 926, 931 (6th Cir. 1998).

"Suretyship is the contractual relation whereby one person, the surety, agrees to answer for the debt, default or miscarriage of another, the principal, with the surety generally being primarily and jointly liable with the principal." *Solon Family Physicians, Inc. v. Buckles*, 645 N.E.2d 150, 152 (Ohio Ct. App.1994) *(citing Hopkins v. INA Underwriters Ins. Co.*, 542 N.E.2d 679, 682 (Ohio Ct. App.1988)); *see also Manor Care Nursing & Rehab. Ctr. v. Thomas*, 704 N.E.2d 593 (Ohio Ct. App.1997); *St. Paul Fire & Marine Ins. Co. v. Industrial Comm. of Ohio*, 506 N.E.2d 202, 210 (Ohio Ct. App.1987) (stating that the surety's obligation is created concurrently with that of the principal debtor).

The doctrine of surety has several defenses by which the surety may avoid liability on the contracted payment bond. F&D has relied upon one of these defenses in arguing that by signing the multiple-party checks presented by Grooms, McWane extended the time of payment by Grooms without F&D's consent, thus discharging the surety obligation.

The district court agreed with F&D's argument that McWane impaired Fidelity's "suretyship status" by unilaterally negotiating the highland checks back to Grooms, without Fidelity's consent, and thereby intentionally forfeiting its right to be paid for its materials from the proceeds of the four multiple-party checks. The district court concluded, "Ohio courts would hold that plaintiff impaired its suretyship status by endorsing the checks presented by Grooms without taking steps to secure payment from Grooms for the materials plaintiff had supplied so as to relieve Fidelity of liability to plaintiff under the Payment Bond."

The determination of the district court, in the instant case, hinged on the Ohio court's decision in a markedly similar case, *Water Works Supplies, Inc v. Grooms Const. Co., Inc.*, No. 10CV 010 (Ohio Ct. Com. Pl. Sept 27, 2001) (unpublished decision). In *Water Works*, the trial court concluded that F&D's surety obligations were discharged

8   *McWane, Inc. v. Fidelity &amp; Deposit Co. of Md.*   Nos. 02-4152/4225

when another supplier, Water Works, endorsed the joint checks issued by Highlands. However, upon review, the Ohio Court of Appeals found little merit in that conclusion, relying instead on the clear language of the Bond to reverse the lower court's grant of summary judgment to F&D. *Water Works Supplies, Inc., v. Grooms Construction Co., Inc.*, 2003 WL 1563809 (No. 01CA18) (Ohio Ct. App., 2003) (unpublished table opinion), *appeal not accepted for review Water Works Supplies, Inc. v. Grooms Constr. Co., Inc.*, 791 N.E.2d 984 (Ohio, 2003). In the instant case, this court considers persuasive the reasoning and conclusions of the Ohio Court of Appeals, as the *Water Works* suit involved the same defendant, the same project, the same joint checks and the identical payment bond waiver clause as presented in the case *sub judice*.

The Ohio courts have recognized that an agreement between the creditor and principal that extends the time for performance will not discharge the surety "absent a concrete showing of prejudice." *Water Works*, 2003 WL 1563809 at *4. As the Ohio Court of Appeals noted in reversing the lower court's decision in *Water Works*, an adequate showing of prejudice may arise where "the principal could have paid the debt by forwarding to the claimant its share of a payment received from the owner, had the claimant not given the principal an opportunity to misapply or dissipate those funds by agreeing to an extension." *Id.*

In the instant case, F&D has claimed that by endorsing the joint checks, McWane improperly granted Grooms an extension of time for payment. In response, McWane has argued persuasively that F&D expressly waived any defense based upon an extension of time in the waiver clause of the Bond.

Evaluating the merit of F&D's defense requires an examination of the language of the Bond. *See G.F. Business Equip., Inc. v. Liston*, 454 N.E.2d 1358, 1359 (Ohio Ct. App.

1982) (noting that the precise words of the contract serve to bind the surety). In interpreting a surety contract, other words cannot be added by construction or implication, but the meaning of the words actually used is to be ascertained in the same manner as the meaning of similar words used in other contracts. They are to be understood in their plain and ordinary sense, to be read in the light of the surrounding circumstances and of the object intended to be accomplished. *See Troyer v. Horvath*, 468 N.E.2d 351, 353 (Ohio Ct. App.1983) ("A bond is to be construed as a contract between the parties and interpreted in accordance with its terms."); RESTATEMENT (THIRD), SURETYSHIP AND GUARANTY § 6 (1996) ("Each rule in [the] Restatement stating the effect of suretyship status may be varied by contract between the parties subject to it."). "Furthermore, any doubtful language in the contract of surety must be construed strongly against the surety, and in favor of indemnity, which the creditor has reasonable ground to expect." *Solon Family Physicians*, 645 N.E.2d at 152.

F&D issued the Bond on March 7, 2000, identifying itself as surety for Grooms as general contractor on the water project. The Bond provided, in pertinent part, that F&D was

> held and firmly bound unto Highland County Water Company . . . and unto all persons, firms, and corporations who are or which may furnish labor, or who furnishes materials to perform as described under the contract. . . . PROVIDED that beneficiaries or claimants hereunder shall be limited to the SUBCONTRACTORS, and persons, firms, and corporations having a direct contract with the PRINCIPAL or its SUBCONTRACTORS.

The Bond also contained a broad waiver clause whereby F&D contractually waived certain potential surety defenses. In pertinent part, that clause provided:

The said SURETY for value received hereby stipulates and agrees that no change, extension of time, alteration or addition to the terms of the contract or to the WORK to be performed thereunder of the SPECIFICATIONS accompanying the same shall in any way affect its obligation on this BOND, and it does hereby waive notice of any such change, extension of time, alteration or addition to the terms of this contract to the WORK or to the SPECIFICATIONS.

F&D has claimed that by not requiring Grooms to immediately pay McWane its share of the joint check, McWane extended the time by which Grooms was allowed to pay, thereby extending the time for performance of the underlying contract. However, F&D's payment bond contract expressly waived notice of any extension of time. *See Water Works* 2003 WL 1563809 at *4 ("A surety bond is, however, a contract and a surety may contractually waive defenses").

F&D has further maintained that McWane impaired its suretyship status by mishandling certain collateral, namely, the four checks that Highland wrote to Grooms, McWane, and other suppliers. Grooms received these checks from Highland, presented them for signature by McWane and the other co-payees, and deposited them into its bank account. Pursuant to this arrangement, Grooms then paid McWane by separate check. McWane has argued that because they did not have possession or control over the joint checks from Highland they could not have impaired F&D's suretyship. McWane's position represents the proper elaboration of suretyship principles and guiding law.

In limited circumstances, an obligee [i.e. McWane] may be held liable for impairment of suretyship status if it acts "to increase the secondary obligor's [i.e. F&D] risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor [i.e. Grooms] to bear the cost of performance." RESTATEMENT (THIRD),

SURETYSHIP AND GUARANTY § 37(1). The burden is on F&D, as a compensated surety, to prove that McWane is liable for any alleged loss or prejudice resulting from its impairment of F&D's suretyship status. RESTATEMENT (THIRD), SURETYSHIP AND GUARANTY § 49(2)(a)(i).

To discharge a surety based on impairment of collateral, the surety must prove that the obligee (i) failed to obtain or maintain perfection in collateral, (ii) released collateral without obtaining substituted collateral of equal value, (iii) failed to perform a duty to preserve the value of collateral, or (iv) failed to comply with applicable law in disposing of collateral. RESTATEMENT (THIRD), SURETYSHIP AND GUARANTY § 42 (2) (a) - (d). The record before this court indicates that McWane did not possess any collateral belonging to Grooms that secured a debt. As McWane had neither power over, nor possession of, any collateral belonging to Grooms, it cannot be held liable for any alleged impairment of F&D's suretyship status. *See Woolworth v. Brinker*, 11 Ohio St. 593 (Ohio 1860) (stating that to give effect to a relinquishment "there must have been a parting with something actually in the power and possession" of the creditor, for without the relinquishment the surety could still exercise its subrogation rights against the debtor).

The Ohio Supreme Court affirmed this position, regarding the duty of a creditor not in possession of collateral, in *Buckeye Fed. Savings & Loan Ass'n v. Guirlinger*, 581 N.E.2d 1352, 1354 (Ohio 1991):

> We find that the most equitable and commonsense approach is to require the party in possession of the collateral to carry the responsibility to conserve it. Public policy will not be served by requiring a creditor out of possession to supervise and, probably, second, guess the debtor as the guarantor in its handling of the collateral in its rightful possession. We hold, therefore,

that a creditor not in possession of collateral cannot be liable for its unjustified impairment.

*See also, Mid-Continent Refrigerator v. Whitterson*, 289 N.E.2d 379, 382 (Ohio Ct. App.1972); *Boyd v. Royal Indemnity*,185 N.E. 422, 423 (Ohio 1933).

In the instant case, the record reveals that McWane had neither possession nor control of the joint checks. Nor did McWane have possession of anything of actual value from Highland. Instead, Grooms presented the multi-party checks to McWane for endorsement solely to facilitate the release of funds from Highland to Grooms, rather than to satisfy an outstanding debt from Grooms. In each instance, Grooms tendered separate payment to McWane. Moreover, at the time Grooms presented the joint checks to McWane for signature, the appellant had no indication from Grooms which funds represented by each check stood as payment for materials supplied by McWane.

Consequently, the district court erred in determining that McWane impaired F&D's suretyship status when it endorsed the multi-party checks presented to it by Grooms.

In its cross-appeal, F&D has maintained that the joint check rule and the UCC each provide an alternative defense to McWane's claim for payment on F&D's Bond to Grooms, which the district court should have entertained. F&D urges this court to find error in the district court's conclusion that neither the UCC provisions nor the joint check rule were material in its decision to grant F&D's motion for summary judgement.

F&D has maintained that Ohio courts should recognize the joint check rule as applicable to the instant matter, thereby discharging F&D's liability as surety. McWane has responded that the joint check rule does not apply to extinguish Fidelity's obligations as a surety because the rule

Nos. 02-4152/4225         *McWane, Inc. v. Fidelity*    13
                          *& Deposit Co. of Md.*

does not apply to the surety of a co-payee, but merely provides that the maker of a joint check is deemed to have paid the materialman named as payee. McWane's position is consonant with the terms and application of the rule.

The joint check rule does not innoculate F&D from liability in this instance. The rule provides that when a subcontractor and the materialman are joint payees, and no agreement exists with the owner or general contractor as to the allocation of the proceeds, a materialman, by endorsing the check, is deemed to have received the monies owed. This rule emerged from the California Supreme Court decision in *Post Brothers Construction Company v. Yoder*, 569 P.2d 133 (Cal. 1977). In that resolution, the court concluded that the joint check rule barred the supplier's claim against the surety, because the owner/contractor was the maker of the multi-party check. It reasoned that when the supplier endorsed the multiple-party check, it waived its right to recovery from the maker of the check. The court further reasoned that the surety for the maker of the checks could use the joint check rule as a defense to the supplier's claim. *Id.* at 134.

As stated and applied, however, the rule does not extend beyond the relationship between the maker of the checks and his or her sureties. As a co-payee, Grooms and its surety F&D stand beyond the reach of the joint check rule. *Id.* at P.2d 137; *see also Iowa Supply co. v. Grooms & Co. Construction, Inc.*, 428 N.W.2d 662, 666 (Iowa 1998) (concluding that the rule only bars claims against the maker of the check for the money due from a subcontractor).

In addition, federal courts that have considered the rule, have noted that a joint check arrangement, standing alone, does not waive a supplier's right to recover from a contractor's surety. *See, e.g., United States ex rel. Clark-Fontana Paint Co. v. Glassman Construction Co.*, 397 F.2d 8, 11 (4th Cir. 1968); *United States ex rel. Youngstown Welding and Eng'g Co. v. Travelers Indem. Co.*, 802 F.2d

| | |
|---|---|
| 14   *McWane, Inc. v. Fidelity*<br>      *& Deposit Co. of Md.* | Nos. 02-4152/4225 |

1164, 1167 (9th Cir. 1986). Moreover, Ohio courts have not yet recognized the joint check rule. *See Water Works* 2003 WL 1563809 at *5. Consequently, the district court did not err in refusing to find the joint check rule dispositive in the case *sub judice*.

F&D has further maintained, in its cross-appeal, that under the UCC, McWane's endorsement on the multiple-party checks represented an unsecured loan to Grooms. McWane has responded that it could not negotiate the joint checks at the time of endorsement because McWane never possessed or controlled the checks.

The record evidence indicates that each of the joint checks was made payable to two or more entities and McWane was the first party to endorse each joint check. Additionally, the joint checks were made payable to all co-payees and not alternatively, and could not be negotiated until all of the co-payees had endorsed a given check. Finally, McWane was not a holder of the checks because a single co-payee cannot be a "holder" under U.C.C. § 3-110: "If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." *See also Pamar Enterprises, Inc. v. Huntington Banks of Mich.*, 580 N.W.2d 11, 15 (Mich. Ct. App. 1998). Accordingly, McWane lacked the legal capacity to negotiate, discharge, or enforce these checks under the strictures of the U.C.C, and the district court did not err in not considering the UCC dispositive in rendering F&D claims.

The district court's grant of summary judgment to F&D is reversed, the district court's resolution of the joint check rule and the UCC is affirmed, and the case is remanded for further proceedings consistent with this opinion.